# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

    Plaintiff-Respondent,

vs.                                         Civ. No. 05-851 JB/ACT
                                              Cr. No. 03-2365 JB

**ERICKSON TSO,**

    Defendant-Movant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court upon Defendant Erickson Tso's ("Tso") Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody filed August 18, 2005. Docket No. 5. The District Judge referred this matter for proposed findings and recommended disposition, and hearing, if necessary. Docket No. 4. Having reviewed the pleadings and relevant law and being otherwise fully advised, the Court finds that the Motion should be denied. Because the issues are resolved on the pleadings and the record establishes conclusively that Tso is not entitled to relief, an evidentiary hearing is not necessary. 28 U.S.C. § 2255; *Trice v. Ward*, 196 F.3d 1151, 1159 (10th Cir. 1999), *cert. denied*, 531 U.S. 835 (2000).

### PROPOSED FINDINGS

<u>Factual and procedural background.</u>

On November 20, 2003, Tso, Trevor Nez and Daniel Foghorn, were charged with first degree murder and aiding and abetting on an Indian Reservation. Tso was charged by an indictment.

On April 27, 2004, Tso pled guilty to a Superceding Information to second degree murder and aiding and abetting in violation of 18 U.S.C. §§ 1153, 1111(a) and 2. On that date, Tso signed a Plea Agreement. The Plea Agreement reveals that the plea was made pursuant to Fed. R. Crim P. 11(c)(1)(C). Thus, the parties to the agreement agreed that a specific sentencing range "is the appropriate disposition of the case..." Fed. R. Crim. P. 11(c)(1)(C). In this matter the range agreed to was 300-360 months imprisonment.

In the Presentence Report ("PSR"), Tso's offense level was computed to be 32 and his criminal history category to be III.[1] Pursuant to the terms of the Plea Agreement, Tso filed a motion seeking a five level upward departure.

On July 19, 2004, a sentencing hearing was held. The Court adopted the findings of the PSR and added five points to Tso's offense level for extreme cruelty, psychological injury and abduction of the victim. The Court sentenced Tso to 300 months imprisonment; supervised released for five years with special conditions; and imposed the special penalty assessment.

During all proceedings, Tso was represented by Douglas E. Couleur ("Couleur").

<u>Assistance of counsel</u>.

Tso asserts a claim for ineffective assistance of counsel. As grounds Tso states that: 1) he did not look at the discovery in his case and thus does not understand why he was sentenced under Category III; 2) he did not receive all the evidence the prosecutor had against him and, again,

---

[1]Tso did not file any objections to the PSR or raise an issue at his plea hearing or sentencing hearing that his criminal history category should be something other than III.

requests transcripts and asks the court to appoint him counsel; 3) he was indicted because of his cousin's testimony and that he informed his counsel that his cousin wanted to recant his testimony and that his counsel responded by telling Tso he would have to testify; and 4) prior to signing the Plea Agreement, he asked his counsel to "dismiss himself" from the case and his counsel said it was too late for him to dismiss his counsel.

To prove ineffective assistance of counsel, Tso must show that his attorney's performance was constitutionally inadequate and that his attorney's constitutionally ineffective performance prejudiced him; i.e., caused him to plead guilty instead of going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Counsel's performance is deficient if it "falls below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). Prejudice is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Counsel is strongly presumed to have rendered adequate assistance and made significant decisions in the exercise of reasonable professional judgment. The ultimate inquiry in a claim for ineffective assistance of counsel focuses on the fundamental fairness of the proceeding. *Id*.

The record does not support Tso's claim. Rather, the record demonstrates that Tso knew and understood the consequences of his plea when he signed the Plea Agreement at the plea hearing and at the sentencing hearing.

The Plea Agreement signed by Tso was entered into the record on April 27, 2004. Crim. Docket. No.53. The Plea Agreement states, in part:

> a. The United States and the defendant have made an AGREEMENT pursuant to Rule 11(c)(1)(C), Fed.R.Crim.P., that a specific sentence is the appropriate disposition of this case. The specific sentence that is agreed to in this plea Agreement is a term of imprisonment with the Bureau of Prisons within the range of 300-360 months imprisonment. Both parties agree this sentence is the appropriate sentence in this matter for Second Degree Murder and the aggravating circumstances of this crime.

3

*Plea Agreement, p. 3.*

The Plea Agreement further states:

> Should either party seek a departure from the agreed term of a sentence within the range of 300-360 months, the other party may withdraw from the plea Agreement and proceed with the case without regard to this Agreement as it shall then be null and void.
> *Id. at 4.*

And under the section entitled "**DEFENDANT'S ADDITIONAL OBLIGATIONS**" the Plea Agreement states:

> ...the defendant knowingly waives the right to appeal a sentence of imprisonment within the range of 300-360 months, which is within the applicable maximum imprisonment for the statute of conviction. In other words, the defendant waives the right to appeal the sentence imposed in his case except to the extent, if any, that the Court may depart upward from the agreed term within the range of 300-360 months.
> *Id. at 5.*

At the plea hearing the Court discussed the Plea Agreement with Tso. A transcript of the hearing demonstrates that Plaintiff was aware of the terms and consequences of his plea of guilty.

> THE COURT: All right. I've been presented with a plea agreement. Did you have an opportunity to read and discuss the plea Agreement with Mr. Couleur before you signed it?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And that is your signature at the bottom of the plea Agreement?
>
> THE DEFENDANT: Yes, it is.
>
> THE COURT: Does the Plea Agreement represent in its entirety the understanding that you have with the United States?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And do you understand the terms of the plea agreement?

>   THE DEFENDANT:  Yes, sir.
>
>   THE COURT:   Anything you don't understand that you want to discuss with Mr. Couleur?
>
>   THE DEFENDANT:  No, sir.  We've gone over everything.

*Transcript of Proceedings, Plea Hearing, April 27, 2004, 7-8.*

>   MS. BURNETT:   Your Honor, pursuant to the 11(c)(1)(C) portion of this plea agreement, the potential sentence under this plea agreement that Mr. Tso faces is 300 to 360 months, which is the same as 25 to 30 years.  The determination of the exact number of months within that range would be the Court's discretion.

*Id. at 10.*

>   THE COURT:   And do you understand in the plea agreement, which I have reviewed a draft of, that you have given up some or all of your rights to appeal the sentence that I impose?
>
>   THE DEFENDANT:  Yes.

*Id at 13.*

>   THE COURT:   And it also agrees on a specific sentence to be imposed within a range of 300 to 360 months; is that correct?
>
>   MR. COULEUR:   Yes, Your Honor.

*Id. at 24.*

The transcript of the sentencing hearing also demonstrates that Tso knew the consequences of his plea of guilty.  *Transcript of Proceedings, Sentencing Hearing July 19, 2004*.  Tso's case is called on page 25 of the transcript and ends on page 91.[2]  There was extensive discussion regarding an addendum to a pleading adding an obstruction charge.  Couleur stated that the addendum stated

---

[2] Mr. Nez was also sentenced at the July 19, 2004 hearing.

"400-some months" and his client did not understand. He asked the Court to recess so he could explain to Tso that the plea agreement stating 300 - 360 months still governed. *Tr. 29*. The Court recessed for thirty minutes. *Tr. 30*.[3] Ultimately the Court found there was insufficient basis to find that Tso obstructed justice. *Id.* at 54.

There was also some discussion concerning Tso's Blakely rights.

> THE COURT: Mr. Couleur, you have been meeting with Mr. Tso this morning. Do you have any reason to think he's not competent to discuss his Blakely rights?
>
> MR. COULEUR: No, Your Honor. I've gone over it with him. I've discussed in some depth – that some of the day here – the fact that he stopped taking his medication about two weeks ago,[4] and he appears to understand and be able to intelligently converse about all the issues, remembers, obviously, what we discussed before. It is his desire to go forward today. He told me that he does understand everything I've explained to him today, the pleadings, and filings from last night, and what occurred prior to in court and those events.

*Id.* at 41-42.

During this discussion the Court said:

> THE COURT: And, Mr. Tso, do you waive your right to have any right that you may have to have a jury decide factual issues relating to aggravating factors that the Court may use to justify an upward departure from the standard range prescribed by the federal sentencing guidelines?
>
> MR. TSO: Yes.

There was also a great deal of discussion concerning how to get to the agreed 300 to 360 month sentence under the Sentencing Guidelines. During these discussions, the culpability of Tso was addressed.

---

[3]The Court also notes that the transcript indicates that Tso and Couleur conferred privately at least 3 times during the sentencing proceeding. Id.at 43, 44 and 53.

[4]Tso was taking medication for depression. Id.at 41.

   COULEUR: ...what he [Tso] did say at the plea colloquy on April 27th was – he said it twice – that he did nothing to stop them. ...[H]he kicked him. ... But probably, Judge, most importantly was after – after my client tells them, you know, "We need to get him somewhere where someone finds him" in order to avoid taking responsibility at that point, he did absolutely nothing to call anybody to say, "Hey, there's a guy laying out on the road," an anonymous phone call, anything like that. ... He's very clearly guilty of second degree murder.

*Id. at 57-58.*


   The Court imposed the following sentence:

   THE COURT: The offense level is 32, and the criminal history category is III, establishing a guideline imprisonment range of 151 to 188 months. However, under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the Court accepts the plea agreement, which includes a specific guideline imprisonment range of 300 to 360 months as the Court is satisfied that the agreed sentence departs for justifiable reasons.
    Here, the Court has indicated that it believes that a five-level adjustment upward is appropriate because of the extreme conduct, because of the extreme psychological injury, a also because of the abduction, and it believes the stated reasons in the factual findings in the presentence report justify that upward departure.
...

   As to Information 1:03CR02365-003 JB, the defendant Erickson Tso is committed to the custody of the Bureau of Prisons for a term of 300 months. The defendant s is placed on supervised release for a term of five years.

*Id. at 84-85.*


In addressing Tso, the Court further stated:

   ...you have entered into a plea agreement which waves [sic] some or all of your rights to appeal the sentence itself. Such waivers are generally enforceable, but if you believe that your sentence is – or your waiver is unenforceable for some reason, you can present that theory to an appellate court.
...
   Mr. Tso, understand that you have waived the right to appeal in your plea agreement, do y under stand your rights to appeal?

   MR. TSO: Yes.

*Id. at 87.*

7

Finally, the Court asked if counsel had any reason that the sentence should not be imposed as the Court stated it and both counsel responded they did not.

*Id. at 86-87.*

As the second ground for his claim of ineffective assistance of counsel, Tso asserts that he did not receive all the evidence the "prosecutor had against me." Petition, p. 7. Again, the record does not support Tso's claim. At the plea hearing, the prosecutor, Ms. Burnett, told the Court the facts that the Government was prepared to prove if the matter went to trial. *Transcript of Proceedings, Plea Hearing, April 27, 2004.*

>Your Honor, on the early morning hours of October the 25th, 2003, Erickson Tso was at home with his family located near the scene of this crime within Navajo Indian Country.
>...
>Early that morning, Daniel Foghorn and Trevor Nez came to his home, knocked on his door, woke him up. He was a friend of each of these individuals, and I believe related to Mr. Foghorn.
>He went outside to talk with them, and after he talked with them, the three of them, based upon the statements made by each of the individuals – Erickson Tso, Daniel Foghorn, and Trevor Nez – agreed to go back to the location where Mr. Williams was t determine what needed to be done.
>It's apparent from the statements of these three individuals, that they were not sure if Mr. Williams was dead.
>When they arrived, there, driving in the vehicle of Mr. Foghorn, they all went up t the location where Mr. Williams still lay. This is the same place where Mr. Nez had left him within an hour– 30 minutes to an hour before.
>Mr. Williams was still alive at that time. And the three individuals, although seriously injured – in fact, I believe that Mr. Tso stated that Mr. Williams did not really l human. However, Mr. Williams was conscious and able to beg for his life, to request help, and to answer questions when asked questions like "Who's your mama?" and other kinds of statements intended to harass, intimidate, and humiliate Mr. Williams.
>In addition to that, the individuals at that location removed all Mr. William's clothing, they beat him severely with sticks that had been cut from the trees and sage brushes in the location to such an extent that those injures from being whipped with those whips is visible in the photographs and was clearly visible to the individuals doing the autopsy.
>During the time that Mr. Tso, Mr. Foghorn, and Mr. Nez remained there at the scene with Mr. Williams, the individuals kicked and struck and also hit Mr. Williams with a large rock. Mr. Tso, in his own statement, admits kicking the victim at least two or three times. The

statements by the other individuals indicate additional participation by Mr. Tso.

>   At some point, the individuals began to decide that it was time to go home, so they picked up Mr. Williams, partially redressed him, loaded him in the back of Mr. Foghorn's truck, and drove him off to a location within a couple of miles...
>
>   They got out of the vehicle, they pulled Mr. Williams out of the vehicle, and as they did, it's been reported by the three individuals that Mr. Williams was limp, and his head struck the ground at that time.
>
> ...
>
>   The statement that Mr. Tso has also given us is that when he first approached the body, he kicked at Mr. Williams – I should perhaps not call it a body, because Mr. Williams was alive at this time – leaned over to listen to see if he was still breathing, to identify if Mr. Williams was alive, and made statements related to "We should dispose of the body."
>
> ...
>
>   ...he did not make any effort to make any phone calls; he did not tell his parents; he did to report this. In fact, he returned to school at Fort Wingate for a couple of days, until after he was identified as one of the assailants. At that time, he was contacted by the FBI. He did make a statement to the FBI about what occurred.
>
> ...
>
>   Both at the scene where he was found, as well as the at the hospital, he was significantly conscious to be able to answer his name, tell people who he was, and also was a little bit resistant, which is not uncommon with people who have had head injury.
>
>   Mr. Williams died shortly thereafter. He was in the hospital probably three to four hours. He died as a result of a very serious head wound, which resulted in the broken skull right over the left, eye, broken left jaw on both ends of the jaw, and a broken hyoid bone.
>
>   His body also showed the trauma of being whipped by the whips from the sagebrush and other things in the area.
>
> ...
>
>   Part of the actions of the defendants, the three of them, that contributed to this hypothermia was they both urinated on him and poured beer on him.
>
> ...
>
>   This evidence would be presented to the Court through a combination of statements made by Mr. Tso, as well as the other defendants, should the Government choose to call them, the witnesses who were there when the body was discovered, the individuals who called in the 911 call, the doctors, as well as other people that these individuals came into contact with between the of Mr. Williams and their returning home.

*Id. at 17-22.*

After this recitation, Tso and Couleur conferred and Tso then admitted that these events could be

proven and that the events and acts could be attributed to him. Tr. 22-23.

9

Based upon the record before the Court, it is clear that Tso was fully aware of the evidence the prosecutor had against him.

Tso also appears to request a transcript and appointment of counsel in this Motion. The Court has previously denied this request and sees no reason to modify its Order. *Docket No. 3*.

As to his third ground for his claim of ineffective assistance of counsel, Tso asserts that Couleur did not pursue the fact that Tso's cousin wanted to recant his testimony and that Couleur told him he would have to testify. There is nothing in the record to support this contention. There is nothing in the record that reflects that Tso had any disagreement with Couleur. The record demonstrates the contrary.

> THE COURT: ...Mr. Tso, are you fully satisfied with the counsel and the representation and advice given to you in this case by your attorney, Mr. Couleur?
>
> THE DEFENDANT: Yeah. Yes.

*Transcript of Proceedings, Plea Hearing, 7*.

Finally, Tso asserts that he asked Couleur to dismiss himself from the case. Again, as demonstrated by the record cited above, there is no basis for this claim.

There is simply nothing in the record to support Tso claim that he did not understand the terms of his plea. Moreover, Tso has failed to show that his counsel's performance was deficient or that "but for" counsel's alleged unreasonable conduct, he would have received a lesser sentence or gone to trial.

Moreover, Tso failed to show that the performance of Couleur prejudiced his defense. *Strickland*, 255 U.S. at 694. The record does not demonstrate that Tso would have insisted on going to trial or would have withdrawn his guilty plea "but for" any alleged conduct of Couleur To the

10

contrary, at the plea hearing and after signing the plea agreement, Tso again pled guilty. Furthermore, at the sentencing hearing, Tso was permitted to address the Court prior to his sentencing. He did not state or indicate he wanted to go to trial or that he wanted to withdraw his plea. *Transcript of Proceedings, Sentencing Hearing, 65.*

**RECOMMENDED DISPOSITION**

I recommend that Tso's §2255 petition be denied and this action be dismissed with prejudice.

Timely objections to the forgoing may be made pursuant to 28 U.S.C.§ 636(b)(1)(C). Within ten days after a party is served with a copy of these Proposed Findings and Recommendations that party may, pursuant to § 636(b)(1)(C), file written objections to such Proposed Findings and Recommendations with the Clerk of the United States District Court, 333 Lomas N.W., Albuquerque, NM 87102. A party must file any objections within the 10 (ten) day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE**